In the Matter of the ESTATE of
Leslie S. BRECKON.

David C. BRECKON, Executor of the
Estate of Leslie S. Breckon, Deceased,
Plaintiff and Respondent,

v.

The STATE TAX COMMISSION of
Utah, Defendant and Appellant.

No. 15768.

Supreme Court of Utah.

Feb. 2, 1979.

Robert B. Hansen, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for defendant and appellant.

William G. Marsden, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant, Utah State Tax Commission (hereinafter "Commission") appeals the decision of the Tax Division of the Third District Court[1] which set aside the Commission's deficiency inheritance tax assessment against the estate of Leslie S. Breckon, deceased.

The matter was presented to the trial court on stipulated facts which reflected that nine days prior to the death of the deceased, he and his wife, Katherine Breckon, quit-claimed their interests as joint ten-

1. Established pursuant to U.C.A., 1953, 59–24–1 et seq.

ants in certain real property to each other as tenants in common. Their admitted purpose in so doing was to remove one-half of the value of the property from the deceased's estate and thus reduce inheritance taxes proportionately.

The Commission required the inclusion of the transferred joint tenancy interest in the gross estate of the deceased, relying upon U.C.A., 1953, 59–12–5,[2] which reads in pertinent part as follows:

(1) Property held in joint names of two or more persons as joint tenants . . . shall be includable in full in the gross estate of any such persons . . .

(2) Any creation, modification or termination of a joint tenancy . . . *shall be deemed a transfer within the meaning of Section 59–12–4*, and if such creation, modification or termination occurs within three years prior to the death of the decedent, it shall be presumed to have been made in contemplation of death. [Emphasis added.]

Plaintiff, David C. Breckon, (hereinafter "executor") successfully convinced the trial court that the foregoing statutory provision requires full inclusion of joint tenancy property within a decedent's estate only if (1) the property is held jointly at the time of death, or (2) the joint tenancy has been so terminated as to be a transfer in contemplation of death as is provided for in U.C.A., 1953, 59–12–4 which reads as follows:

Any transfer of a material part of any such property in the nature of a final disposition or distribution thereof made by a decedent within three years prior to his death, *except a bona fide sale for a fair consideration in money or money's worth*, shall be presumed to have been made in contemplation of death, for the

purposes of this chapter. [Emphasis added.]

Inasmuch as it is conceded that the subject transfer was made in *actual* contemplation of death, the sole issue presented for our determination is whether said transfer falls within the statutory exception designated as "a bona fide sale for a fair consideration in money or money's worth."

■ It is to be observed at the outset that there is a distinction to be drawn between a transfer made in contemplation of death for the purpose of *lawfully avoiding* taxes and one made for the purpose of *unlawfully evading* taxes.[3] The statute[4] clearly sanctions the former and precludes only the latter. In light of such distinction, it is of no consequence that the executor concedes that the subject transfer was in actual contemplation of death.

■ A close analysis of the ramifications of the conversion of the joint tenancy into a tenancy in common is necessary in order to resolve the issues presented. Under the joint tenancy, both husband and wife held a concurrent ownership in the same estate with a right of survivorship. The title being so vested, each of them was afforded the eventuality of a *full* ownership interest, conditioned upon the tenancy remaining unsevered,[5] and one out-living the other. By exchanging that interest for an undivided one-half interest (tenancy in common), each of them relinquished the conditional opportunity of becoming the owner of the whole interest.

■ Specifically as to the effect of the transfer upon each of the participants, since the deceased was on his deathbed, the transfer quite obviously caused Katherine

**2.** This chapter has no application to transfers of property by those who die on or after January 1, 1977, the effective date of U.C.A., 1953, 59–12A–1, et seq. (Utah Inheritance Tax Reform Act). Said Act conforms to the Internal Revenue Service Code in imposing only a tax in the amount of the federal credit. Consequently, this case is generally rendered moot.

**3.** Taking advantage of a legitimate course of conduct to effect tax savings may result in collection of fewer taxes by the tax collector, but it nevertheless has judicial sanction. *Budget Homes, Inc. v. State Tax Commission*, 120 Utah 425, 235 P.2d 501 (1951), following *U. S. v. Isham*, 17 Wall. 496, 21 L.Ed. 728 (1873).

**4.** U.C.A., 1953, 59–12–4, supra.

**5.** As to the severability of a joint tenancy see *Tracy-Collins Trust Co. v. Goeltz*, 5 Utah 2d 350, 301 P.2d 1086 (1956).

Breckon to give up substantially more than she received. On the other hand, the deceased received by the transfer far more than he gave, all of which compels the conclusion that the transfer was for "a fair consideration in money or money's worth" as is referred to in the applicable statute.[6] The consideration given for the transfer also qualifies as the essential element of the enforceability of contracts generally.[7]

In regard to the further provision of the statute[8] which pertains to the "bona fides" of the parties to the transfer, it appears that the issue presented thereby is one of first impression in this jurisdiction. However, the issue has been considered in other jurisdictions, both federal and state.

It is to be noted that the Utah statute[9] is identical in substance to the federal code[10] which provides in relevant part as follows:

(a) Inclusion of Gifts Made by Decedent.—

Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

(b) Exceptions.—

Subsection (a) shall not apply to—

(1) *any bona fide sale for an adequate and full consideration in money or money's worth* . . . [Emphasis added.]

In the case of *Sullivan's Estate v. Commissioner*,[11] it was determined that where a husband and wife converted a joint tenancy into a tenancy in common, that such constituted a bona fide sale for adequate consid-

eration and upon the death of the husband within two months thereafter, that only his one-half interest was to be included as part of his estate. The holding was based on the view adopted in Utah that a joint tenant cannot dispose of more than his own interest in joint tenancy property, i. e., one-half thereof.[12]

The Supreme Court of Oregon in *Hardwick v. Department of Revenue*[13] followed the holding in *Sullivan* wherein it stated the matter in the following language:

We find, therefore, that the analysis of the similar federal statutes should be applied to the Oregon statutory provisions. Defendant argues that this view embodies an unrealistic emphasis of property concepts over tax concepts. We are willing to de-emphasize the technicalities of property law in favor of a more workable tax system in appropriate cases, but defendant is asking us in the present case to discard well established methods of transferring and holding property which serve legitimate purposes and therefore should not be frustrated simply to serve the state's desire to create a more efficient tax collecting system. The balance between the fiscal interests of the public in maintaining certainty of the incidents of established modes of holding property should be struck by the legislature. We hold that the shares in plaintiff's name at the time of decedent's death are not subject to inheritance tax.

The transfer which concerns us here is one that legitimately falls within the long-established concepts of real property conveyancing,[14] and the fact that it also serves

6. Supra, footnote 4.

7. *Manwill v. Oyler*, 11 Utah 2d 433, 361 P.2d 177 (1961); see also, 17 Am.Jur.2d Contracts, Section 85.

8. Supra, footnote 4.

9. Ibid.

10. Internal Revenue Code, Section 2035.

11. 175 F.2d 657 (9th Cir. 1949); followed in *U. S. v. Heasty*, 370 F.2d 525 (10th Cir. 1966); *Glaser v. U. S.*, 306 F.2d 57 (7th Cir. 1962);

*Estate of Derby*, 20 T.C. 164 (1953); *Matter of Estate of Mavrogenis*, 74 Wis.2d 162, 246 N.W.2d 147 (1976).

12. See *Tracy-Collins Co. v. Goeltz*, supra, footnote 5.

13. 272 Or. 100, 535 P.2d 89 (1975).

14. See also, U.C.A., 1953, 30–2–3, which provides that conveyances by either husband or wife to, or in favor of the other, are valid to the same extent as between other persons.

the legitimate purpose of easing the estate tax burden is not to be condemned.

The trial court's decision is adequately supported by reasonable statutory interpretation and well-reasoned case law. It is therefore affirmed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

